Tammy Hussin (SBN: 155290)
HUSSIN LAW
1596 N. Coast Highway 101
Encinitas, CA 92024
Tel: (877) 677-5397
Fax: (877) 667-1547
Tammy@HussinLaw.com

Attorney for Plaintiff, Angela Isley-Price

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DISTRICT

| | |
|---|---|
| Angela Isley-Price,<br><br>                    Plaintiff,<br><br>   v.<br><br>Westlake Financial Services LLC, a California Limited Liability Company; and DOES 1-10, inclusive,<br>                    Defendants. | **Case No.**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1.  VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 *et seq.*;**<br>**2.  VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE § 1788 *ET. SEQ.*** |

        For her Complaint, the Plaintiff, Angela Isley-Price, by undersigned counsel, states as follows:

### JURISDICTION

        1.        Jurisdiction of this Court arises under 28 U.S.C. §1331, and pursuant to 28 U.S.C. §1367 for pendent state law claims.

        2.        This action arises out of Defendants' violations of the Telephone

Consumer Protection Act, 47 U.S.C. § 227, *et .seq*. (the "TCPA"); and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §1788, *et. seq.* ("Rosenthal FDCPA"), by the Defendants and its agents in their illegal efforts to collect a consumer debt.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant's principal place of business is located here, regularly engages in business here, and a substantial portion of the acts giving rise to this action occurred here.

## PARTIES

4.    Plaintiff, Angela Isley-Price (hereafter "Plaintiff"), is an adult individual residing in Madera, California. Plaintiff is a "person" as defined by 47 U.S.C. §153(10) and is a "debtor" as defined by the Rosenthal FDCPA.

5.    Defendant, Westlake Financial Services, LLC ("Westlake"), is a California limited liability company, with its principal place of business located in Los Angeles County, California. Westlake is a "person" as defined by 47 U.S.C.A. § 153(39) and is a debt collector as the term is defined by the Rosenthal FDCPA.

6.    Does 1-10 are other entities which, upon information and belief, may have engaged in collection activity on behalf of Westlake.  One or more of the Collectors may be joined as parties once their identities are disclosed through discovery.

7.    As detailed more fully below, Plaintiff allegedly owes a financial obligation (the "Debt") to Westlake. The Debt arose from services provided by Westlake which were primarily for family, personal or household purposes.

## WESTLAKE'S HISTORY OF UNLAWFUL AND UNFAIR CONDUCT

8.    Westlake specializes in purchasing and servicing subprime and near-subprime automobile loans. These loans are made to borrowers who generally have low credit scores, low income levels, and are generally among the least sophisticated consumers.

9.    Westlake is notorious for preying on these unsophisticated consumers, and for violating federal and state consumer protection laws while engaging in unfair

1   and illegal debt collection tactics. Westlake's widespread illegal conduct caught the

2   attention of the Consumer Financial Protection Bureau ("CFPB"), and Westlake was

3   ordered to pay consumers $44 million dollars in relief for its widespread unlawful debt

4   collection activities. *See*, http://files.consumerfinance.gov/f/201509_cfpb_consent-order-

5   westlake-services-llc.pdf.

6          10.     In announcing the Order, the CFPB said: "Consumers struggling to pay

7   their bills deserve to be treated with respect, not subjected to illegal threats and

8   deceptive phone calls. We will continue to clean up the debt collection market and root

9   out these illegal and inexcusable practices." *Id*.

10         11.     As part of the Order, the CFPB mandated Westlake to cease its unlawful

11  and illegal debt collection activities and overhaul its business practices. Despite being

12  ordered by the federal government to clean up its act, Westlake continues to abuse

13  customers, like Plaintiff, on a regular and systematic basis. In fact, the CFPB still

14  receives hundreds of consumer complaints each year regarding Westlake's illegal

15  collection tactics. *See*, https://data.consumerfinance.gov/dataset/Consumer-

16  Complaints/s6ew-h6mp.

17         12.     In addition to those consumers who complain to the government, other

18  consumers have lodged thousands of complaints regarding Westlake's abuse. Westlake

19  customers continue to complain of Westlake's aggressive and abusive debt collection

20  tactics, and of getting inundated by Westlake with unwelcome automated calls.

21                        **WESTLAKE AND THE TCPA**

22         13.     As part of its unlawful and unfair debt collection tactics, Westlake

23  bombards its customers with automated collection calls without their consent in

24  violation of the Telephone Consumer Protection Act ("TCPA").

25         14.     Westlake is no stranger to the TCPA, and has been called to defend a

26  multitude of TCPA actions, including TCPA class actions. In one such action, Westlake

27  agreed to pay $10 million dollars to settle (*Duchene v Westlake Services*, Case 2:13-cv-

28  01577-MRH (W.D. Penn.).

15. Even after knowing the prohibitions of the TCPA and paying millions to settle TCPA claims, Westlake chooses to disregard the Act by continuing to place automated calls to consumers without their consent.

16. The TCPA was designed to protect the privacy of consumers, and to prevent companies, like Westlake, from harassing consumers with unwanted robocalls. *See, e.g. Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012); TCPA, Pub.L. No. 102–243, § 11.

17. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

18. Essentially, the TCPA requires that any "autodialed or prerecorded calls, *including debt collection calls*…have either written or oral consent if made to wireless consumers." FCC-15-72A1_Rcd ("2015 FCC Order"), ¶12 (emphasis added). As such, a company may only autodial those consumers who provided their express consent to be called.

19. However, "[c]onsumers have a right to revoke consent, *using any reasonable method* including orally or in writing." *See,* 2015 FCC Order, FCC-15-72A1_Rcd, page 36 ¶ 64  (emphasis added). Once a consumer revokes their consent to be called, the company must honor that request and stop calls to that number. *Id.*

20. The TCPA not only applies to telemarketers, but it also applies to debt collectors like Westlake. 2015 FCC Order; *Meyer v. Portfolio Recovery Associates*, LLC, 2012 WL 4840814 (9th Cir.).

21. The TCPA imposes a hefty penalty on its violators, and it is a strict liability statute. Section 227(b)(3) provides for damages of $500 for each and every call made in negligent violation of the Act. In the event the caller knowingly or willfully

1   violated the TCPA, damages can be trebled for up to $1,500 per call. *Id. See, e.g., J2*
2   *Global Communications v Blue Jay, Inc*., 2009 WL 4572726 (N.D. Cal.); *King vs. Time*
3   *Warner Cable*, Case No. 14-cv-2018-AKH (S.D. NY).

4
5                           <u>**WESTLAKE AND THE PLAINTIFF**</u>

6       22.    Plaintiff's recent experience with Westlake typifies the unlawful abuse
7   described by thousands of other consumers.

8       23.    On or around January of 2017 Plaintiff and her husband purchased a
9   vehicle, and the loan for the vehicle was financed through Westlake. Plaintiff also
10  purchased GAP insurance through Westlake.

11      24.    On or around February 8, 2018, the vehicle was involved in an accident
12  and was declared a total loss.

13      25.    Based on the fact that the vehicle was totaled and since Plaintiff has
14  purchased GAP insurance through Westlake, Plaintiff ceased making payments on the
15  loan.

16      26.    Thereafter, Westlake began initiating calls to Plaintiff's cellular telephone
17  in an attempt to collect the outstanding balance.

18      27.    Plaintiff spoke to Westlake and explained why she hadn't paid, but
19  representatives continued to demand payment.

20      28.    Plaintiff told Westlake to stop calling, but the calls nonetheless persisted.
21  Representatives told Plaintiff the calls would not stop until she made a payment.
22  Plaintiff ultimately agreed to make a small deferment payment of $50.00 in order to get
23  the calls to stop.

24      29.    The calls from Westlake were delivered at a harassing and annoying rate,
25  disrupting Plaintiff throughout each day. The calls were particularly annoying because
26  they were automated. When Plaintiff answered the calls, Westlake used an automated
27  voice, forcing Plaintiff to waste her time waiting for a representative to come on the line.

28      30.    Plaintiff repeatedly objected to the calls from Westlake, and told

                                        4                              COMPLAINT

representatives on multiple occasions to stop calling. Inasmuch as the GAP insurance would cover the entire loan owed to Westlake, Plaintiff did not wish to pay any amount to Westlake. Moreover, Westlake failed to process the insurance claims on a timely basis. Despite hours of phone conversations with Plaintiff trying to get her insurance claims processed, Westlake dragged its feet while continuing to demand payment from Plaintiff.

31.   Westlake charged Plaintiff interest and late fees even though the loan should have been fully paid by the GAP insurance. Had Westlake processed the insurance timely, Plaintiff would not have been charged additional late fees and interest.

32.   While Westlake bombarded Plaintiff with automated calls, representatives were unable to assist Plaintiff and could not explain the reasons for the delay in processing the claim. Plaintiff received wrong information, misinformation, confusing information, and was left feeling oppressed, angry, and frustrated.

33.   The automated calls from Westlake caused Plaintiff to feel anxiety and distress. The automated calls intruded on Plaintiff's right to be free from unwarranted invasions.

## COUNT I
## VIOLATIONS OF ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE §1788 *et. seq.*

34.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

35.   The Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 *et. seq*. ("Rosenthal Act") prohibits unfair and deceptive acts and practices in the collection of consumer debts.

36.   Westlake caused Plaintiff's telephone to ring repeatedly and engaged the Plaintiff in continuous conversations with an intent to annoy the Plaintiff, in violation of Cal. Civ. Code § 1788.11(d).

37.   Westlake violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq,* and therefore violated Cal. Civ. Code § 1788.13(e). In particular:

a. Westlake bombarded Plaintiff with calls while knowing Plaintiff did not wish to receive collection calls and knowing the barrage of calls would not result in a payment, in violation of 15 USC §1692d;

b. By giving Plaintiff conflicting and confusing information and refusing to stop the calls unless Plaintiff paid, Westlake violated 15 USC §1692e; and

c. By failing to cooperate in the insurance claim process, and then charging additional interest and fees in violation of 15 USC 1692f.

## COUNT II
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT -47 U.S.C. §227, *et. seq.*

38.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

39.     Within the last four years, Westlake called Plaintiff on her cellular telephones without her consent by using an automatic telephone dialing system ("ATDS") and by using a prerecorded or artificial voice.

40.     When Plaintiff answered the calls, Westlake used an automated or prerecorded voice prior to connecting Plaintiff to a live representative.

41.     Defendants also left messages on Plaintiff's voicemail using an automated voice.

42.     Westlake's telephone dialing system has the capacity to store randomly or sequentially generated telephone numbers and randomly or sequentially dials telephone numbers.

43.     The calls from Defendants to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. §227(b)(1)(A)(i).

44.     Although Plaintiff originally provided her consent to be called by Westlake, Plaintiff effectively revoked her consent by telling Westlake many times to stop calling.

6                                                    COMPLAINT

45.     As such, Westlake's automated calls were made without consent in violation of the TCPA pursuant to 47 U.S.C. §227(b)(1)(A)(iii).

46.     Westlake knows the prohibitions of the TCPA, and has been called to defend itself in a multitude of TCPA law suits nationwide, including TCPA class action litigation. Despite being intimately familiar with the TCPA, Westlake continued to barrage Plaintiff with automated calls over her repeated objections while knowing the calls were extremely upsetting for Plaintiff.

47.     As such, the automated calls Westlake made to Plaintiff were made in knowing and/or willful violation of the TCPA, and Westlake should be subject to treble damages pursuant to 47 U.S.C. § 227(b)(3)(C). *See, e.g., King v Time Warner Cable,* 1:14-cv-02018-AKH (S.D.N.Y.); *J2 Global Communications v Blue Jay, Inc.,* 2009 WL 4572726 (N.D.Cal.); *Coniglio v Bank of America*, Case No. 8:14-cv-01628 EAK-MAP (USDC, M.D. FL., Docket No. 16, Oct. 11, 2014).

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendants:

A.     As a result of each call made in negligent violation of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B).

B.     As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiff is entitled to treble damages in an amount up to $1,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

C.     Statutory damages of $1,000.00 for knowingly and willfully committing Rosenthal FDCPA violations pursuant to Cal. Civ. Code § 1788.30(b);

D.     Reimbursement of actual damages based on interest charges and late fees wrongfully assessed on Plaintiff;

7                                         COMPLAINT

E.     Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3) and Cal. Civ. Code § 1788.30; and

F.     Such other and further relief as may be just and proper.

DATED:  July 2, 2018                    HUSSIN LAW


By:  */s/Tammy Hussin*
Tammy Hussin, Esq.
Attorney for Plaintiff, Angela Isley-Price